[No. 1512.]

## In re Probate of D'Avignon's Will.  Robb, Appellant.

1. Wills—Probate—Evidence—Appeal to District Court.

In the probate of a will in the first instance in the county court, if two or more of the subscribing witnesses testify that they believe the testator was at the time he signed the will of sound mind and memory, the court is precluded from making any further inquiry as to the testamentary capacity of the testator.   But upon appeal to the district court from a judgment of the county court either admitting or refusing to probate a will, neither the proponent nor the contestant is limited to the testimony of the subscribing witnesses, but may introduce any competent testimony as to the mental capacity of the testator.

2. Wills—Subscribing Witnesses.

The mere fact of attesting a will by subscribing witnesses is not an affirmation that they believe the testator to be of sound mind and memory, and their testimony on probate of will denying mental capacity is not contradictory.

3. Wills—Evidence—Mental Incapacity.

The facts of this case discussed and held sufficient to prove the mental incapacity of the testator to execute a will.

*Appeal from the District Court of Lake County.*

Mr. T. A. Dickson and Mr. L. Frank Brown, for appellant.

Mr. Charles Cavender and Mr. Frank M. Goddard, for appellee.

WILSON, J.

Dr. F. F. D'Avignon, an old resident and prominent physician of Leadville, died in November, 1895. In December following, a writing purporting to be his last will and testament was presented to the county court of Lake county for probate. The usual statutory requirements as to citation of heirs, the fixing of a time for hearing, etc., having been complied with, a hearing was had and probate refused on the express ground that at the time of the execution of the purported will, the testator was not of sound mind and memory, and was by reason thereof not competent to execute the same. The proponent took an appeal to the district court, and a trial being had in this court, at which the widow of the deceased appeared as a contestant, the same judgment was rendered. In this proceeding in the district court, the sole ground of contest was lack of testamentary capacity. Substantially, the claim of contestants was that the mind of deceased had been affected, and his want of testamentary capacity occasioned by his excessive indulgence for a number of years preceding his death, in the use of morphine, opium, chloroform, and possibly other narcotics, and that at the very time of the purported execution of the will, he was suffering from such overindulgence, and was mentally incapacitated. From this judgment of the district court, the proponent appeals to this court.

One of the first contentions of appellant requiring notice, and that most strongly relied upon by counsel, is that the district court erred in permitting the contestant to offer any evidence as to the mental capacity of the testator at the time of execution of the will other than that of the subscribing witnesses. It is urged by them with much force that the statutes of Colorado in reference to the probate of wills in the first instance are taken from those of Illinois, and that the prior construction of such statutes by the Illinois courts was adopted by the legislature of this state in the adoption of the statute, and is binding upon the Colorado courts. It is

claimed that section 3499 of our General Statutes is identical with a similar section of the statute of wills in Illinois. This is true, and it is also correct that about 1840 the supreme court of Illinois, in *Walker v. Walker*, 2 Scammon, 291, held that on an appeal from a judgment of the probate court refusing probate of a will, it was not competent for either party to introduce any testimony in relation to the sanity or insanity of the testator except that of the subscribing witnesses to the will. Before we can concede, however, the contention of counsel, a further examination of the statute of wills in Illinois must be had, and a further comparison made between it and the laws of Colorado upon the same subject. In 1845, the legislature of Illinois made a further enactment providing that in case of an appeal from a refusal of the county court to probate a will, it should be lawful for the proponents to support the same on hearing in the circuit court by any evidence competent to establish a will in chancery. This act was passed, as the Illinois courts have held, presumably in consequence of the decision in *Walker v. Walker*, and was therefore held to be a legislative adoption of the construction of the statute made by the court in that case. Since that time, by reason of such legislative adoption of such construction, the courts in that state have held that upon appeal, no evidence as to the sanity of the testator other than that of the subscribing witnesses could be offered by any party except the proponents. Long subsequent to this, the statute of wills in Colorado was enacted, and whilst it adopted from Illinois section 3499, *supra*, it did not adopt the other statute enacted because of the decision in *Walker v. Walker*. On the contrary, it provided that on an appeal from an order either admitting the will to probate or refusing probate, the proponent might support the same upon trial of the appeal by any evidence which would be competent in case probate of said will had been allowed, and the same was afterwards contested as provided in this chapter by an action in the district court of the county instituted for that specific purpose. Gen. Stats. sec. 3510. The legislature of Colorado therefore did

not adopt the legislative and judicial construction of the Illinois statute above referred to. If it was only incumbent upon the proponents upon appeal from an order admitting a will to probate to prove by two or more of the subscribing witnesses that so far as the sanity of the testator was concerned, they believed the testator to be of sound mind and memory at the time of signing and acknowledging the will, why should this section provide that in case of an appeal from such an order, other evidence than that of the subscribing witnesses might be introduced by the proponent? If the will was admitted to probate in the county court, it must have been upon the testimony of the subscribing witnesses that they believed the testator to be of sound mind and memory. There was therefore no necessity on appeal for any other evidence to be introduced in behalf of proponents, if the appellate court was compelled to grant probate upon such evidence. The only reasonable conclusion is, construing the two sections together, that it was contemplated contestants might on appeal offer evidence as to the testamentary capacity of the testator, and of course proponents, in order not to be placed at a disadvantage, should be given the same privilege. The latter section indicates, if anything, an intention of the Colorado legislature not to be controlled by the decision of the Illinois courts as to similar statutes.

We are confirmed in this conclusion by a further comparison of the statutes of the two states. It will be seen by an examination of the whole of the statute of wills, and it must be construed as a whole, that the statutes of the two states differ in essential and vital particulars. In upholding the decision in *Walker v. Walker*, and in subsequent cases, the courts uniformly give as a controlling reason that the rule laid down, which might be termed an arbitrary one, did not deprive the contestant of any right. It was held that the proceeding in the probate court in reference to probate of wills in the first instance, and on appeal to the circuit court, was intended to be summary, and then for the protection of contestants, the statute specially provided that at any time

within three years, any person interested in or under the will might by a bill in chancery contest the validity of the same upon the ground of want of sanity, or upon any other ground that he might see fit to urge, and which would be sufficient in law to defeat it.   Our statute differs from this in a marked degree, in that this right to contest by bill in equity in the district court is restricted exclusively to heirs at law or persons interested, who were not summoned by actual service of process, and who did not appear at the probate of said will. Another section of our statute, which by the way, was not in the Illinois statute, requires that in the probate of wills in the first instance, the county court shall issue a citation to all of the heirs at law of the testator, so far as he can ascertain them, requiring them to attend the probate of said will at the day fixed by the court; and in the case of minor heirs, it provides that the county court shall appoint guardians *ad litem* for them.   Now, if an heir so cited to appear, does appear in obedience to the mandate of the court, he is absolutely precluded from thereafter instituting this proceeding by bill in equity in the district court to contest the validity of the will.   He is therefore denied at any time, if the contention of appellant be correct, the privilege of raising the question as to the testamentary capacity of the testator. Surely, no such a wrong was contemplated by the legislature, or can be upheld by the courts.   We think that the district court did not err in permitting both proponent and contestant to offer testimony both of the attesting and other witnesses as to the testamentary capacity of the deceased at the time of the alleged execution of the will.

In the probating of a will, whatever may be the form of procedure or in whatever court the proceedings may be had, only one ultimate fact is to be ascertained and determined, only one issue is presented, was the writing the last will of the testator as it purported to be?   If it appear that at the time of its execution the testator lacked proper testamentary capacity or that he acted under compulsion or undue influence, or that it was tainted by vitiating fraud, then the writ-

ing was not the will of the decedent, and probate will be refused. Upon such a hearing in the first instance in the county court, which it is apparent for many reasons not necessary now to discuss, was intended to be of a summary character, the court is by statute expressly precluded from making any further inquiry into the testamentary capacity of the testator if it appear from the testimony of two or more of the attesting witnesses that they believe the testator was of sound mind and memory at the time he signed and acknowledged the writing. In other words, the statute in effect says this testimony shall be *prima facie* sufficient upon the question of testamentary capacity, and if there are no other statutory objections shown, the will shall be admitted to probate. Upon appeal to the district court, however, the trial must in this as in all other cases be *de novo*, and the statute nowhere undertakes to specifically direct the appellate court in the exercise of its power, or limit the scope of its inquiry. The issue of fact before it is, was the writing the last will of the testator as it purported to be, and in the absence of any legislative restrictions, it would naturally and reasonably follow that a court of its general and extended jurisdiction could embrace within its inquiry all matters pertinent to a solution of the question to be determined. The most essential requisite to the validity of a will is that the testator shall have been of sound mind and memory at the time of its execution, and shall it be said that the district court shall not be permitted full and free inquiry into this, simply because the legislature has seen fit to provide that in the summary probate proceeding in the county court in the first instance, certain testimony shall be sufficient with reference to the mental capacity of the testator to admit the will to probate, and permit the appointment of an executor or administrator who could at once take charge of and conserve the property of the estate? Such a doctrine cannot be supported upon either reason or principle. Is it not more likely that the statute, section 3499, was based upon the consideration that the sanity of the testator was a question of too much importance to be submitted

for determination by summary procedure in the county court, and that it therefore applied solely to the proceedings in that court? To hold otherwise and thus deprive the district court of the jurisdiction and power which it has in all other cases, would be a bald assumption, and a judicial interpretation unwarranted by any rules of statutory construction.

The history and extent of the Illinois rule, as well as the reasoning of the courts in support of it, are shown by a reference to the following cases, an examination of which will, we think, alone demonstrate that the rule is not proper nor applicable under the Colorado statute. *Walker v. Walker, supra ;. Andrews v. Black,* 43 Ill. 256 ; *Duncan v. Duncan,* 23 Ill. 365 ; *Crowley v. Crowley,* 80 Ill. 469 ; *Heirs of Critz v. Pierce,* 106 Ill. 16.

Counsel for proponent insist, however, that the judgment in this case was not sustained by proofs of a proper and satisfactory character, and that it is contrary to the evidence, and the weight of the evidence. In support of the first proposition, they urge that subscribing witnesses to a will by the . mere act of attestation impliedly certify that the testator was at the time of its execution possessed of sufficient testamentary capacity, and that in the probate of a will or in a suit involving its validity, any testimony on their part impeaching or intending to impeach the capacity of the testator, should be received with great suspicion and caution, and that but little weight should be attached to it independent of other corroborating evidence. This may be true under the statutes of some states, and without statute possibly under the circumstances of some particular cases, but we do not think that the doctrine is true as a general proposition, nor that it is specially applicable under the statutes of this state, nor that there are any circumstances surrounding this particular case which would call for or justify its application. The attestation clause to the will now under consideration was as follows : " Attested at the request of testator, Mch. 17, '94." There is therefore nothing in the language here used to indicate an intention to make any attestation or certification as to the

mental capacity of the testator. Moreover, our statute expressly requires, as a condition precedent to the probate of a will, that the subscribing witnesses shall swear that at the time of its execution they believed the testator to be of sound mind and memory, and upon this proof being made, together with the formal proof of signing, the court is required to admit the will to probate, unless there should be proof of fraud, compulsion, or some other improper conduct sufficient to invalidate or destroy it. Now, if the rule be as proponent contends, why the necessity of requiring these witnesses to testify as to their belief? If the mere attestation of the will was an affirmation on the part of the witnesses that they believed the testator to be of sound mind and memory, why the necessity of any other proof than that they had signed this affirmation and saw the testator sign? It has been frequently held that it is not essential to the validity of a will that the testator declare to the witnesses that it is his will, nor, in fact, need they even know it. *Ela v. Edwards*, 16 Gray, 92; *Leverett v. Carlisle*, 19 Ala. 80; *Dickie v. Carter*, 42 Ill. 376; Cassoday on Wills, § 151.

This being true, the argument of counsel falls to the ground. If it is not necessary to the validity of a will that the attesting witnesses should even know that it is a will, certainly it cannot be claimed with any reason that by their attestation of it, they impliedly certify that the testator was capable of making a will. On the contrary, it is expressly held that the testimony of the subscribing witnesses as to the mental capacity of the testator is most important, and that great weight should be attached to it unless it should be weakened by circumstances arising in particular cases. The question to be determined in such cases is the mental capacity of the testator at the time the will is signed. His capacity either previous or subsequent to this time is immaterial, except as it may bear upon the question of his capacity at the time of signing. Usually, too, the subscribing witnesses are the only persons present at the time of the execution of a will, hence can give positive and direct testimony, whereas other testi-

mony must of necessity be more or less negative and circumstantial. In view of this fact, these witnesses are allowed to do what no other witness but an expert is,—to give their opinion of the mental condition of the testator, without connecting such opinion with what they may have heard the testator say, or saw him do. Cassoday on Wills, § 210; *Boylan v. Meeker*, 28 N. J. Law, 274.

In regard to the contention that the judgment is against the evidence, we might content ourselves with saying that the facts having been determined by the trial court, and the judgment not being manifestly against the weight of the evidence, it would not be disturbed. Especially might we invoke this rule, where as in the case at bar, there have been two trials and in each the judgment has been the same. We are aware, however, that the only evidence which can be produced in hearings of this character is different from that of ordinary trials. The essential fact to be determined, to wit, the mental capacity or incapacity of the testator, cannot be shown by direct and positive proof. It can only be deduced as a conclusion from certain facts which are shown. It may be said, therefore, that in a certain sense, the evidence in a case of this kind offered by the two parties, cannot be conflicting. There may be no denial of the facts testified to by the witnesses on each side, but there may be a wide divergence of opinion as to the conclusions with reference to the condition of the testator's mind to be drawn from these undisputed facts. We have therefore carefully examined the evidence which has been preserved, and our conclusion is that the judgment is not only not against the evidence, but is supported by the weight of the evidence. In coming to this conclusion, we have placed great reliance upon the testimony of three witnesses, who unquestionably had far better opportunities than all others to know the facts bearing upon the precise point to be determined, and to form and express an intelligent opinion. Two of these were subscribing witnesses, Mr. Ewing and Judge Owers. Both of these gentlemen were well acquainted and intimately associated with the testator. They

lived in the same locality, saw the testator daily, and were men with whom he consulted and conversed about his personal affairs. Mr. Ewing had been for several years his attorney, and had also acted during that time, by request of the testator himself and of his relatives, in the nature of his guardian, that is to say, according to his testimony, not only attending to the business of the testator in a professional way, but "looking after his physical condition, and trying to keep him from dying, and squandering what he had, as much as I could, either in a friendly or a professional way." He testifies most positively that at the time of the execution of the will, the testator was not either of sound or disposing mind, and details facts and occurrences at the time and preceding the time of signing which furnish a strong basis and support for such an opinion. The testimony of Judge Owers substantially supports that of Mr. Ewing. He said that at the time of the execution of the will, the testator talked incoherently; that his face was bloated; that he was then manifestly under the influence of drugs; that he had been on a series of debauches from about February 1 preceding, out of one into another, being constantly more or less under the influence of some drug, and that at the time of signing the will, it was his opinion that if he had read it over to the testator, the latter did not have sufficient mental capacity to have understood its purport and known to whom he was giving his property. The other witness to whom we have referred was Dr. Page. The doctor was not then engaged in the practice of his profession, but he had been an intimate friend of the testator for about seventeen years, and had been in the habit for several years of staying with the testator whenever he was upon a debauch, in the capacity of "nurse, friend and physican." At the time of the execution of this will and for weeks previous, Dr. Page was and had been in constant attendance upon and in personal charge of the testator. He stated many facts in regard to the character and amount of drugs that were taken by the testator, the effect upon his mind, and as to his mental condition on the

identical evening when this purported will was executed. He says that he was upon that evening in his opinion not in a sane condition, and for that reason he objected very much to the testator leaving for Denver, which he did upon that evening after signing this will. He further says that in his opinion on that day, March 17, the testator "was not capable of performing intelligently the ordinary pursuits of life." We believe that it is unnecessary to further pursue this investigation into the testimony. The excerpts which we have made are only a few from a mass of testimony of a similar kind. In our opinion the weight of the evidence is beyond a doubt in favor of the judgment.

The views which we have expressed render it unnecessary for us to consider several questions which have been ably discussed by counsel for proponent. Having found that the judgment was supported by the weight of the evidence, it is immaterial to determine upon whom the burden of proof rested in such case, nor as to what extent the common-law presumption of sanity prevails in such a controversy.

From the record before us, we conclude that the judgment was right, and it will be affirmed.

*Affirmed.*